# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN DEON ALLEN, | : | |
|     Plaintiff, | : | |
| v. | : | CIVIL ACTION |
| C/O RYAN ELLIS and | : | No. 17-652 |
| RONALD COLEMAN, | : | |
|     Defendants. | : | |

MCHUGH, J.                                                                                              JULY 31, 2017

## MEMORANDUM

In this case, Brian Deon Allen, a former inmate at George W. Hill Correctional Facility in Delaware County, claims Ryan Ellis, a corrections officer at George Hill, violated the Eighth Amendment by failing to protect him from a violent attack by another inmate.[1] Ellis moves to dismiss that claim, as well as Allen's accompanying negligence claim, for failure to state a claim. For the reasons that follow, I will deny Ellis's motion.

## I. Background

Allen was an inmate at George Hill for the last six months of 2016. Am. Compl. ¶ 2. One night toward the end of his stay, he and another inmate, Ronald Coleman, got into an argument after Coleman attempted to steal items Allen had bought from the prison commissary. ¶ 9. The very next morning, Allen showered near his cell on the prison's C-Block, which Ellis was then charged with overseeing. ¶¶ 9–10, 18. Allen alleges that while he was leaving the showers, Coleman threw a large cup of boiling water all over his body, face, and eye. ¶¶ 10–13.

Earlier that morning—and mere hours after exchanging words with Allen—Coleman had boiled water and "salty seasoning" in a "Ramen-type noodle" cup. ¶ 12. Though how Coleman

---

[1] Allen has also brought an assault and battery claim against that inmate, Ronald Coleman. Coleman has neither answered the complaint nor filed a motion to dismiss.

1

boiled the water is not precisely clear, Allen alleges that at George Hill "inmates have been known" to fuse wires (extracted from radios bought at the commissary) with batteries and paper clips (taken from the law library) to boil water in their cells. ¶ 12 n.1. Allen claims that videos showing how to do this can be "readily found on the internet." *See id.* (linking to an example).

Both during and prior to the attack, Allen claims, Ellis, though assigned to C-Block, had "abandoned his post" and was instead somewhere on D-Block. ¶ 18. Allen, who was first taken to the prison's medical unit before being transported to an outside hospital, suffered severe burns. ¶¶ 14–15. The boiling water had turned his skin pink; Allen recalls that his skin was even "capable of moving and sliding." ¶ 16. The attack has left him "disfigured"—he still "bears prominent scarring." ¶ 20.

Allen filed this suit under 42 U.S.C. § 1983, alleging that Ellis, by leaving his post on C-Block, intentionally or recklessly exposed him to a substantial and known risk of serious harm from Coleman and thus violated the Eighth Amendment. Allen also brings against Ellis an overlapping claim for negligence. Ellis now moves to dismiss both claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

II. **Standard of Review**

On a Rule 12(b)(6) motion, my task is merely to decide whether the plaintiff has stated a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In doing this, I must "draw on [my] judicial experience and common sense," *id.,* and "construe the complaint in the light most favorable to the plaintiff," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). It does not matter whether the complaint is "as rich with detail as some prefer"—the only question is whether, "under any reasonable reading" of it, there are "sufficient facts to support [a] plausible claim[]." *Id.* at 210–12.

**III.     Discussion**

For the following reasons, I will deny Ellis's motion and sustain Allen's claims.

**A. Eighth Amendment Claim**

The Eighth Amendment "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency,'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation omitted), which in turn includes a duty on the part of prison officials to protect inmates against "violence at the hands of other prisoners," *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation omitted). Regardless of the crime for which someone is incarcerated, "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 437 (1981)).

To state any Eighth Amendment claim, a plaintiff must plausibly allege that "(1) 'the deprivation alleged [was] objectively, sufficiently serious;' and (2) [that] the 'prison official . . . ha[d] a sufficiently culpable state of mind.'" *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001) (quoting *Farmer*, 511 U.S. at 534). With respect to the defendant's state of mind, the plaintiff must prove "'deliberate indifference' to inmate health or safety," *Farmer*, 511 U.S. at 534, which requires that the official knew of and disregarded an excessive risk to inmate health or safety. *Id*. at 837. In the specific context of a claim alleging a failure to protect, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

In moving to dismiss Allen's Eighth Amendment claim, Ellis argues that even if he is deemed to have abandoned his post, he did not have the required knowledge of a substantial risk of harm to Allen to be liable under *Farmer*. Ellis also claims that, regardless of what he knew,

3

he could not in any event have prevented Coleman's spur-of-the-moment attack on Allen, and so Allen cannot show the required causal connection to state an Eighth Amendment claim.

Though this is a close case, neither of Ellis's arguments is strong enough to prevail. As to state of mind, *Farmer* itself made clear that a plaintiff may meet the deliberate indifference standard by "present[ing] evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus "must have known" about it.'" 511 U.S. at 842 (citation omitted). Here, Allen alleges that the night before Coleman attacked him, the two had an altercation—one that, reading Allen's amended complaint generously, would have been known to the prison guard on duty at the time. If Ellis was "exposed to information" about Allen and Coleman's argument, it is plausible that he knew of, and ignored, a substantial risk of harm to Allen. This is all the more true in light of Allen's allegation that inmates' practice of boiling water in their cells was common: in other words, Coleman not only had a motive to attack Allen (the altercation)—he also had an opportunity (the boiling water). So while it remains an open question whether Ellis did in fact know of, and ignore, this elevated risk of harm to Allen, I conclude that Allen has "plausibly" alleged that he did. *Cf. Bistrian v. Levi*, 696 F.3d 352, 370 (3d Cir. 2012) (admonishing courts not to "expect clairvoyance" from plaintiffs at the Rule 12(b)(6) stage).

Finally, as to causation, Ellis's argument that he could not have been expected to prevent Coleman's split-second attack ignores the fact that one reason prison guards need to be at their posts is to deter acts of aggression. It is certainly true that some acts of violence happen so quickly as to be unpreventable, and that some aggressors are so committed to inflicting harm that deterrence is irrelevant. But Ellis's argument is so broad that it would render the duty to protect

meaningless and automatically relieve prison officials of any duty to take proper precautions to guard against specific and known risks.

Allen's Eighth Amendment claim will be sustained.

**B. Negligence Claim**

For related reasons, Allen has also adequately stated a claim for negligence. In Pennsylvania, "one who has custody of another is under a duty of reasonable care to protect him from injuries at the hands of third persons, within the custodian's control, to whom he has been rendered vulnerable by the custody or manner of custody." *Ammlung v. City of Chester*, 302 A.2d 491, 496 (Pa. Super. Ct. 1973) (quoting Restatement (Second) of Torts § 320). *Ammlung* itself applied this principle to a case brought against jailers. *See also Cochrane v. Kopko*, 975 A.2d 1203, 1206 (Pa. Commw. Ct. 2009) (inmates are "analogous to invitees for purposes of determining the duty of care owed by prison officials" (citing *Graf v. County of Northampton*, 654 A.2d 131, 134 (Pa. Commw. Ct. 1995))); *cf. Whitley v. Albers*, 475 U.S. 312, 320 (1986) ("[P]rison administrators are charged with the . . . 'obligation to take reasonable measures to guarantee the safety of the inmates themselves.'" (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984))). Allen was in Ellis's custody at the time Coleman attacked him, and so Ellis had a duty to exercise reasonable care to "protect him from injuries at the hands of third persons." It is plausible that Ellis, in abandoning his post on C-Block, breached that duty, and so Allen's negligence claim will be sustained as well.[2]

---

[2] In arguing that he had no duty to protect Allen, Ellis relies on a series of cases—all outside the traditional prison-custody context—involving whether and when a professional, like a doctor, has a duty toward third-party victims of violent crime. For instance, in Pennsylvania, a mental health professional who knows that his patient presents a serious danger of violence to a third party has a duty to warn that third party. *See Emerich v. Phila. Ctr. for Human Dev., Inc.*, 554 Pa. 209, 231–32, 720 A.2d 1032, 1043 (1998). Allen is not a "third party" to Ellis; to the contrary, Ellis owed a duty directly to Allen as an inmate under his care.

## IV. Conclusion

Ellis's motion to dismiss will be denied.  An appropriate order follows.

      /s/ Gerald Austin McHugh
United States District Judge